UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SUSAN E. GREGOIRE,**

    **Plaintiff,**

vs.                                               Case No. 8:04-CV-1205-T-EAJ

**JO ANNE B. BARNHART,
Commissioner of
Social Security,**

    **Defendant.**

_____/

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42, United States Code, Sections 405(g)and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying her claim for a period of disability and Disability Insurance Benefits ("DIB").[1]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 9).

substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405 (g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine for the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

## I.

Plaintiff alleges an onset of disability on January 7, 2001 due to thoracic outlet syndrome and a hearing loss. (T 22) Forty-seven years old at the time of the hearing before the ALJ, Plaintiff has a high school equivalency education plus two years of college and has past relevant work as a bookkeeper, data entry

clerk, and manager of an auto body shop. (T 29, 22)[2] A hearing was held before the ALJ on August 27, 2003. (T 21-32)

In the November 20, 2003 decision denying benefits, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and continued to meet the insured requirements of the Act through the date of the ALJ's decision. (T 30) The ALJ found that Plaintiff had the following combination of medically determinable severe impairments: musculoskeletal pain, thoracic outlet syndrome, and a hearing loss. (T 22) In addition, the ALJ found that Plaintiff suffered from depression but had no severe mental impairment. (T 22, 27) However, the ALJ determined that Plaintiff's impairments did not meet or equal an impairment listed in the Listing of Impairments. (T 31) The ALJ also concluded that Plaintiff's testimony regarding her limitations was not totally credible. (Id.) The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work activity.[3] (Id.)

---

[2] The record contains inconsistencies regarding Plaintiff's age. At the beginning of the ALJ's decision, the ALJ referred to Plaintiff as being fifty-three years old. (T 22) However, the ALJ's findings referred to Plaintiff as a "younger individual between the ages of 45-49." (T 31) Plaintiff stated at the hearing before the ALJ that she was forty-six years old. (T 47) Also, in the text of the ALJ's decision, the ALJ cited Plaintiff's birthday as October 12, 1956 and subsequently referred to Plaintiff as being forty-seven years old. (T 29) Based on Plaintiff's birthday, the court concludes that Plaintiff was forty-seven years old at the time of the hearing before the ALJ. However, these inconsistencies do not affect the outcome of this opinion.

[3] Addressing Plaintiff's RFC, the ALJ found: "claimant has

3

The ALJ concluded that Plaintiff's impairments prevented Plaintiff from performing any of her past relevant work. (Id.) However, the ALJ noted that Plaintiff possessed transferable skills from previously performed skilled work, had education above a high school level, and was a "younger individual between the ages of 45 and 49." (Id.) In addition, a Vocational Expert ("VE") testified regarding the significant number of jobs in the national economy Plaintiff could perform, such as: security monitor and food checker. (T 30) Therefore, the ALJ held that Plaintiff was not under a disability as defined in the Act and thus not entitled to disability benefits. (T 32)

On May 12, 2004, the Appeals Council denied Plaintiff's request for review. (T 4-6) Accordingly, the Appeals Council allowed the ALJ's decision to stand.

Plaintiff argues that the Commissioner erred by (1) failing to accord substantial weight to the evidence provided by Plaintiff's treating sources; (2) improperly discrediting Plaintiff's testimony and failing to utilize the Eleventh Circuit's three-part pain

---

the residual functional capacity to perform light work activity with lifting and/or carrying no more than fifteen pounds occasionally and no more than ten pounds frequently; standing/walking no more than three hours in an eight-hour workday. The claimant is precluded from climbing ladders and scaffolds and balancing. She is also restricted from repetitive use of the right upper extremity for reaching, handling or manipulation. She is also to avoid moving machinery, unprotective heights and hazards. She is precluded from operating dangerous machinery and must have minimal interaction with the public due to a hearing loss in her right ear." (T 31)

4

standard; (3) failing to question the VE appropriately; (4) and neglecting to consider the side effects of Plaintiff's medications (Dkt. 7 at 2-9).

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

**II.**

**A.**   Plaintiff contends that the ALJ failed to give the opinions of Plaintiff's treating sources appropriate weight.  In addition, Plaintiff argues that the ALJ failed to consider properly Plaintiff's complaints regarding the side effects of Plaintiff's pain medications.  Since these two arguments are intertwined, they are addressed together.

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject such an opinion.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).  However, the opinion of a treating physician regarding a disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the evidence.  Bloodsworth, 703 F.2d at 1240; see also Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991).   In addition, when assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefor.  Sharfarz v. Bowen, 825

F.2d 278, 279 (11th Cir. 1987)(citation omitted).  Ultimately, the ALJ is responsible for deciding whether the claimant is disabled; however, when making that decision, the ALJ must review all medical findings and additional evidence which supports a medical source's statement that a claimant is disabled.  See 20 C.F.R. § 404.1527(e).

Plaintiff does not specify any particular physicians or their findings but makes the conclusory assertion that "[t]aken together, the records of the Claimant's treating doctors are supported by the medical evidence and are entitled to substantial weight."  (Dkt. 7 at 7-8).[4]

As the Commissioner points out, none of Plaintiff's treating and examining physicians indicated that Plaintiff was unable to work (Dkt. 12 at 7).  It is not clear what treating physician findings the ALJ should have credited, according to Plaintiff because the argument is non-specific.  The ALJ's decision reflects that Plaintiff has visited a number of physicians during the pertinent time period, primarily for symptoms relating to neck pain, numbness in both arms, and a hearing loss.  The ALJ summarized the pertinent findings made by Plaintiff's physicians. (T 23-28)

---

[4] The court agrees with Defendant's statement that "Plaintiff's argument is puzzling, because she does not identify any physician or state any opinion at odds with the ALJ's findings and conclusions." (Dkt. 12 at 4).

The ALJ noted Plaintiff's June 2000 diagnosis and subsequent surgeries in June and October 2001 for thoracic outlet syndrome and that her surgeon had opined that Plaintiff might not be able to do any manual functions or tasks with her left hand until the post-surgery resolved. (T 24, 27)  Following the surgery, the surgeon, Brad Johnson, M.D. ("Dr. Johnson") referred Plaintiff to Naomi Abel, M.D. for a neurological work-up because he felt that there was nothing more to be done from a surgical standpoint. (T 23-24, 27, 160-182, 211-224)  The ALJ commented on Dr. Johnson's evaluation of Plaintiff in June, 2000 in which Dr. Johnson determined Plaintiff did not show signs of thoracic outlet syndrome or C5 or C6 involvement.  (T 23, 215-216)

The ALJ noted Plaintiff's evaluation by Dean Gobo, M.D. ("Dr. Gobo") in July 2000 upon Plaintiff's reports of numbness in both arms and hearing loss. (T 23-24, 149-151)  The ALJ continued his decision by discussing Dr. Gobo's recognition of Plaintiff's arm tingling, dizziness, tiredness, etc. and Dr. Gobo's referral of Plaintiff to M. I. Saleh, M.D. ("Dr. Saleh") in August 2000. (T 24, 151-153)

In addition, the ALJ acknowledged Plaintiff's May 2001 visit with Craig Bennett, M.D. ("Dr. Bennett") and Dr. Bennett's initial conclusion that Plaintiff likely had thoracic outlet syndrome. (T 24, 158) The ALJ discussed Dr. Bennett's subsequent determination, after various tests, which showed no evidence of neuro-foraminal

narrowing, that there was no evident cause for Plaintiff's pain, leading him to refer Plaintiff back to Dr. Johnson.  (T 24, 154)

The ALJ explained the surgery Dr. Johnson performed on June 5, 2001, Dr. Johnson's diagnosis of right thoracic outlet syndrome, and Dr. Johnson's discharge restriction that Plaintiff refrain from heavy lifting with her left arm for at least two weeks. (T 24, 27, 160-171, 181-182, 212)  In addition, the ALJ commented upon Dr. Johnson's conclusions in June, 2002 that Plaintiff had right-sided tinnitus, continued difficulty using her arms, and problems with her left hand and thumb.  (T 24, 211)

The ALJ described, in detail, Plaintiff's neurological consultation with Tomas Delgado, M.D ("Dr. Delgado").  (T 25-27, 294-314)  Dr. Delgado reviewed Plaintiff's symptoms and the results of her MRI, concluding that neck or brain surgery was unnecessary. (T 25-27, 295-297)

The ALJ discussed Plaintiff's evaluation performed by Loren Bartels, M.D. ("Dr. Bartels") for episodic vertigo and hearing loss.  (T 26-27, 315-341)  The ALJ's detailed discussion of Plaintiff's visits with Dr. Bartels, included Dr. Bartels's findings that Plaintiff had severe hearing loss in right ear, suffered from right Meniere's disease, tinnitus, and episodic vertigo. (T 26-27, 316)  The ALJ cited Dr. Bartels's determination that Plaintiff was adapting well to her loss of peripheral function.  (T 26, 328)

8

The ALJ noted Plaintiff's psychological evaluation with B. J. Hatton, M.D. ("Dr. Hatton") on July 10, 2002. (T 26, 229-232) Dr. Hatton detailed Plaintiff laughing and showing good social skills. (T 25, 231) He observed that Plaintiff did not exhibit a significant depressed mood. (T 25, 231) Dr. Hatton noted that Plaintiff previously drank heavily and used drugs, but that she was no longer using drugs or drinking heavily. (T 25, 230) Dr. Hatton also concluded that Plaintiff's short-term memory, attention, and concentration were intact, and Plaintiff's insight and judgment were good. (T 25, 230) The ALJ noted Dr. Hatton's prognosis that Plaintiff had a transient depressed mood when she was unable to perform a task due to physical limitations; however, Plaintiff did not suffer from an affective disorder and the primary reason Plaintiff applied for disability benefits was due to her physical problems. (T 25, 232) Dr. Hatton concluded Plaintiff may suffer transient difficulty depending upon her pain level. (T 232)

The ALJ also discussed Plaintiff's evaluations by the following State agency psychological and medical consultants: James Mendelson, Ph.D. ("Dr. Mendelson") in September 2002, Jim Takach, M.D. ("Dr. Takach") in November 2001, and James J. Green, M.D. ("Dr. Green") in July 2002. (T 28-29, 241-253, 203-210, 233-240)[5]

---

[5] The ALJ noted that the State Agency medical physicians "found that the claimant had the residual functional capacity to perform a wide range of 'light' work activity with occasional postural limitations in climbing, balancing, stooping kneeling,

9

The ALJ noted that Dr. Mendelson found that Plaintiff did not have a medically determinable impairment. (T 28, 241-253) Dr. Mendelson concluded that Plaintiff no longer had a mental disorder. (T 253)

Both Dr. Takach and Dr. Green concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for six hours in an eight-hour workday, and was limited in her upper extremities. (T 204, 234) Dr. Takach determined Plaintiff's manipulative limitations were limited, while Dr. Green determined Plaintiff was only limited in reaching overhead. (T 206, 236) Both physicians determined that Plaintiff's only environmental limitation was to hazards. (T 207, 237) However, Dr. Takach determined Plaintiff should avoid moderate exposure to hazards, while Dr. Green concluded Plaintiff should avoid concentrated exposure to hazards. (T 207, 237) Dr. Takach did not make specific conclusions summarizing Plaintiff's abilities; however, Dr. Green concluded Plaintiff was able to drive, shop, and do light chores. (T 238)

The ALJ explained that due to additional evidence after the State agency medical consultants performed their assessments, Plaintiff's impairments were more limited than the State examiners

---

crouching and crawling and never climbing ladders, ropes or scaffolds" and "found manipulative limitations in reaching in all directions, handling, fingering and feeling." (T 28) The State Agency physicians further determined that Plaintiff should avoid exposure to hazards. (Id.)

10

determined. (T 28) Consequently, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work activity rather than a wide range of light work activity.[6]

The duty to resolve conflicts in the evidence is the duty of the Commissioner in the first instance, not the reviewing court. See generally Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). This is true even though the evidence may preponderate in favor of the claimant. (Id.) The ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. See 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating weighing an opinion on whether the claimant meets a listed impairment or a claimant's residual functional capacity. See 20 C.F.R. §§ 404.1454 and 404.1546.

---

[6] Light work activity includes the ability to lift or carry up to twenty pounds occasionally, ten pounds frequently, sit up to six hours and stand and or walk at least six hours in an eight-hour workday. (T 28) The ALJ's conclusion after receiving additional evidence was that Plaintiff could perform a limited range of light work activity which included: "lifting and/or carrying no more than fifteen pounds occasionally and no more than ten pounds frequently; standing and/or walking no more than three hours in an eight-hour workday. The claimant is precluded from climbing ladders, scaffolds and balancing. She is also restricted from repetitive use of the right upper extremity for reaching, handling or manipulation. She is also to avoid moving machinery, unprotective heights and hazards. She is precluded from operating dangerous machinery and must have minimal interaction with the public due to a hearing loss in her right ear." (Id.)

After reviewing all of the evidence of record, the undersigned concludes that the ALJ's analysis of Plaintiff's treating physicians' opinions was consistent with the Eleventh Circuit's standards as enumerated in <u>Wiggins</u>, 679 F.2d at 1389 and other cases. No treating physician determined that Plaintiff was unable to work. In addition, no treating physician placed permanent restrictions on Plaintiff's functional abilities. Accordingly, Plaintiff's very conclusory argument that the ALJ impermissibly failed to give controlling weight to the opinions of Plaintiff's treating physicians is without merit.

In addition to arguing that the ALJ failed to accord substantial weight to Plaintiff's treating sources, Plaintiff contends that the ALJ failed to consider the side effects of Plaintiff's medications on her ability to work.

Contrary to Plaintiff's assertion, the ALJ's decision notes that "[Plaintiff] testified that she takes medications and then has side effects that make her tired." (T 23) When asked at the hearing whether or not she suffered any side effects from the pain medication, Plaintiff stated that the medication left her tired and listless. (T 55)

As discussed by the Commissioner, the record does contain two accounts of Plaintiff's side effects of medication. Plaintiff reported to Joseph C. Williams, M.D. ("Dr. Williams") on July 3, 2002 that she suffered upset stomach from her headache medication:

Imitrex. (T 225) In addition, Plaintiff was temporarily taken off of the medication gentamicin due to "mild gentamicin toxicity." (T 254)

Plaintiff does not offer any support for her argument indicating how the ALJ failed to consider the side effects of Plaintiff's medications on her ability to work (Dkt. 7 at 9). The two reports which noted Plaintiff's side effects did not provide a detailed description of the side effects. Plaintiff's reaction to the medication "gentamicin" was "mild" (T 254) and Plaintiff was taken off "gentamicin" temporarily. Plaintiff's reported upset stomach was not described as chronic or further noted by her physicians.

As will be discussed <u>infra</u>, the ALJ correctly discredited Plaintiff's subjective complaints, which included Plaintiff's complaints of side effects of medication. (T 26, 27, 31)

Accordingly, Plaintiff's argument that the ALJ did not consider the side effects of Plaintiff's pain medications is without merit. Further, as noted <u>supra</u>, the ALJ did accord substantial weight to Plaintiff's treating medical sources. Therefore, Plaintiff's arguments that the ALJ neither gave substantial weight to Plaintiff's treating medical sources nor recognized the limitations caused by her medications' side effects are both without merit.

13

**B.** Plaintiff contends that the ALJ discredited Plaintiff's testimony and failed to utilize the Eleventh Circuit's three-part pain standard.

The Eleventh Circuit's three part "pain standard" requires the Secretary to credit a claimant's subjective pain testimony if there is (a) evidence of an underlying medical condition; and, (b) either (1) objective medical evidence confirming the severity of the pain resulting from the medical condition or (2) that the objectively determined medical condition must be of a severity which can reasonably be expected to cause the alleged pain. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). Under the alternate prong of the pain standard, subjective pain testimony which is supported by clinical evidence of a condition which can reasonably be expected to produce the symptoms of which a plaintiff complains is itself sufficient to sustain a finding of disability. This prong requires the Commissioner to evaluate the credibility of a claimant's testimony as to pain and to articulate a reasonable basis for rejecting the testimony if it is rejected. Sewell, 792 F.2d at 1068. The reasons must be based on substantial evidence. See Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[7]

---

[7] This standard is consistent with Social Security regulations which provide that a claimant may establish a disability through subjective testimony of pain if "medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms." Elam v. R. R. Ret. Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (citing 20 C.F.R. §§ 404.1529, 416.929).

An ALJ's credibility determination "does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." (Internal citations omitted).  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

During the administrative hearing, Plaintiff described the following impairments: (1) difficulty writing, making simple calculations, and picking up a newspaper due to pain in her hands (T 48), (2) pain and numbness despite undergoing surgery in 2001 (T 51), (3) lessened strength in her grip (Id.), (4) tinnitus and vertigo (T 52), (5) problems with her equilibrium (T 53), (6) fatigue (Id.), (7) blurred vision in her right eye (T 54), and, (8) an inability to lift any more than five pounds.  (T 57)

The ALJ articulated several reasons for not finding testimony totally credible.  First, the ALJ noted that Plaintiff's testimony about her impairments was greater than what could be supported by objective and clinical findings.  (T 26)  For example, Plaintiff complained of numbness in both arms; however, radiology reports revealed only mild elevation and mild opacities.  (T 26, 312-313)

Second, the ALJ noted Dr. Delgado's neurological examination which provided essentially normal results without any motor or sensory functional deficits.  (T 27, 295-297) In addition,

15

Plaintiff's mental examination with Dr. Delgado yielded normal results. (T 296)

Third, the ALJ noted Dr. Williams's conclusion that there was no objective evidence which would keep Plaintiff from gainful employment. (T 27, 228) Finally, the ALJ determined Plaintiff's allegations were not totally credible due to Dr. Hatton's findings that Plaintiff did not show any more than a slight mood impairment. (T 27, 232)

In sum, the ALJ enumerated several reasons for rejecting Plaintiff's subjective complaints of pain. See <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1203 (11th Cir. 1989) (ALJ properly discredited a plaintiff's subjective complaints of pain when he specifically articulated at least three reasons supported by the record for rejecting such testimony). Accordingly, Plaintiff's argument is without merit, and the ALJ's decision to reject Plaintiff's subjective complaints is supported by substantial evidence.

**C.**   Plaintiff also submits that the ALJ erred in his questioning of the VE. Plaintiff correctly states that an ALJ's questions to a VE must comprehensively describe Plaintiff's impairments. <u>Pendley v. Heckler</u>, 767 F.2d 1561, 1563 (11th Cir. 1985) (a hypothetical question posed to the VE must include each of a plaintiff's impairments in order to sustain a finding by an ALJ based on the VE's testimony).

16

Plaintiff's memorandum of law on this issue, however, mentions this argument in a cursory fashion and fails to detail the defects in the ALJ's hypothetical question (Dkt. 7 at 9).

An ALJ is not required to include in the hypothetical question limitations that she finds unsupported in the record or not credible. See Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1229 (M.D. Fla. 2002) (citations omitted).

As noted previously, the ALJ found that Plaintiff had the RFC to perform "a limited range of light work activity with lifting and/or carrying no more than fifteen pounds occasionally and no more than ten pounds frequently; standing and/or walking no more than three hours in an eight-hour workday. The claimant is precluded from climbing ladders, scaffolds and balancing. She is also restricted from repetitive use of the right upper extremity for reaching, handling or manipulation. She is also to avoid moving machinery, unprotective heights and hazards. She is precluded from operating dangerous machinery and must have minimal interaction with the public due to a hearing loss in her right ear." (T 28)

The ALJ's hypothetical question asked the VE to assume that a person such as Plaintiff had the following restrictions:

> . . . lift and carry under 15 pounds on occasion, under 10 pounds on a frequent basis. Who can sit for six hours out of an eight hour day and can stand and walk for under three hours in an eight hour work day. Should never climb ladders, scaffolds. Should never

17

> balance. Should do no repetitive use of the right upper extremity for reaching, handling, manipulating, or feeling. Should avoid moving machinery. Should avoid unprotected heights and hazards. Should do no operation of dangerous machinery and vehicles and should have a job were [sic] writing reports is, is not a requirement because of an inability to, to be able to read and write for extended periods of time and would be also an, an impairment, as far as working with the public and working in a job answering telephones, particularly in the environment where the person has to perform those jobs with a, with a lot of background noise because of a - - the right ear deafness.

(T 67) The VE determined that such an individual could not perform Plaintiff's past relevant work as an accounting clerk. (T 67-68) However, the VE determined that Plaintiff could perform other jobs that existed in the regional or national economy, such as: security monitor or food checker. (T 68)

The ALJ's hypothetical question posed to the VE was complete and was consistent with the ALJ's RFC findings which are supported by the record as a whole. In addition, Plaintiff has failed to articulate a flaw in the ALJ's hypothetical question to the VE. Accordingly, Plaintiff's argument on this issue is without merit.

## Conclusion

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) the decision of the Commissioner be **AFFIRMED**; and

(2)  the Clerk of Court shall enter final judgment in accordance with 42 U.S.C. § 405(g) and close the file, with each party bearing his own costs and expenses.

**DONE AND ORDERED** in Tampa, Florida on this 29th day of July, 2005.

ELIZABETH A JENKINS
United States Magistrate Judge